**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Warren E. Peterson

v. Civil No. 14-cv-432-LM

John Masse et al.[1]

**REPORT AND RECOMMENDATION**

Before the court is the complaint (doc. no. 1) filed by New Hampshire State Prison ("NHSP") inmate Warren E. Peterson, asserting claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and state criminal law. The complaint is here for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a).

**Preliminary Review Standard**

The court may dismiss claims asserted in an inmate's

[1]Defendants, each named in their individual and official capacities, are: New Hampshire State Prison ("NHSP") Lt. John Masse; New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn; DOC Capt. Christopher Kench; Hearing Officer Lester Eldridge; Cpl. Provost, whose first name is unknown ("FNU"); Cpl. FNU Havlock; Lt. FNU Courchesne; Capt. FNU Boyijian; NHSP Warden Richard Gerry; Corrections Officer ("C.O.") K. Jardine; Maj. Jon Fouts; Capt. Paul Cascio; C.O. FNU Baxter; and Lt. FNU Marden.

complaint if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The court treats as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**Background**

Peterson asserts the following federal claims in the complaint:

1. Defendants discriminated against Peterson based on his disability, violated his due process rights, and engaged in witness tampering, when, in March/April 2013, they subjected him to disciplinary proceedings resulting from Peterson's failure to provide a urine specimen for a drug test, despite his documented medical history of paruresis[2];

[2]Paruresis, also known as "shy bladder syndrome," Sheehy v. Palmateer, 68 F. App'x 77, 78 (9th Cir. 2003), is a condition that may interfere with an inmate's ability to urinate in the

2. Defendants violated Peterson's due process rights, and subjected him to disciplinary proceedings based on an unconstitutionally vague disciplinary offense, when, in 2014, Peterson was charged with being disrespectful to NHSP Capt. Paul Cascio by calling him a "liar";

3. Defendants retaliated against Peterson for a 2005 lawsuit he filed against NHSP officials, by charging him with disciplinary offenses and/or harassing him in 2006 and 2007, by not permitting his son to visit him on Father's Day and Christmas in 2012, and by effecting housing transfers in 2013; and

4. Defendants violated Peterson's First Amendment right to access the courts by restricting Peterson's access to his legal files in February and March 2013, and losing some of his legal files.

Peterson seeks damages and injunctive relief.

## Discussion

I. ADA Claims

Peterson asserts that he was charged and convicted of a disciplinary offense for failing to provide a urine specimen, in a manner that constitutes disability discrimination, in violation of Title II of the ADA. Specifically, Peterson alleges that he has a history of paruresis, and that he holds a medical pass specifying that in the event of urinary retention, he is to be "give[n] 10 oz. of water and place[d] in dry tank x1

---

presence of an officer when ordered to do so for a drug test. See generally Terbush v. Mass. ex rel. Hampden Cnty. Sheriff's Office, 987 F. Supp. 2d 109, 120 (D. Mass. 2013).

hour with a cup." Peterson asserts that Corrections Officer ("C.O.") K. Jardine, in March 2013, ordered Peterson to produce a urine specimen, without following the procedures specified in the medical pass. Jardine charged Peterson with a major disciplinary offense when Peterson did not urinate as directed. Peterson appeared before Hearing Officer Lester Eldridge, and was found guilty of the charges. Eldridge imposed a set of major disciplinary penalties, and all of Peterson's administrative appeals through the NHSP chain of command were unavailing.

Title II of the ADA provides, in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The facts alleged in the complaint are sufficient to allow Title II official capacity claims to proceed against those defendants who were involved in the disciplinary proceedings. In the order issued this date, the court orders service upon defendants Provost, Jardine, Eldridge, Gerry, Kench, and Wrenn. Because the ADA does not provide for individual capacity lawsuits against state officers, see Barnes v. Young, 565 F. App'x 272, 273 (4th Cir. 2014), the district

judge should dismiss Peterson's individual capacity ADA claims.

II. Section 1983 Claims

A. Eleventh Amendment

The Eleventh Amendment bars claims for damages asserted against state actors sued in their official capacities, except where Congress has abrogated the states' immunity or the state has consented to suit. See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014). New Hampshire has not waived its immunity as to the type of § 1983 claims for damages asserted here, and Congress has not abrogated the states' immunity for such suits. See Barrett v. Coplan, 292 F. Supp. 2d 281, 287 (D.N.H. 2003); see also Coggeshall v. Mass. Bd. of Reg. of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010). Accordingly, the district judge should dismiss Peterson's official capacity § 1983 damages claims.

B. Disciplinary Proceedings

Peterson claims that prison officials denied him due process in prison disciplinary proceedings relating to the failure to provide a urine specimen in 2013 and his calling Capt. Cascio a liar in 2014, by interfering with his presentation of evidence and his efforts to call, confront, and

cross-examine witnesses, and by failing to follow relevant prison policies and procedures relating to those charges. Additionally, Peterson cites the "void for vagueness" doctrine in asserting that the prison rule underlying his 2014 disciplinary conviction of disrespect towards Capt. Cascio, NHSP Policy and Procedure ("PPD") 5.25, is invalid under the First and Fourteenth Amendments.

1. Procedural Due Process

a. Liberty Interests

Peterson asserts violations of his Fourteenth Amendment rights, relating to the 2013 and 2014 disciplinary proceedings, which he alleges did not satisfy the minimum requirements of procedural due process. Under Sandin v. Conner, 515 U.S. 472 (1995), the court must determine if the restrictive conditions resulting from disciplinary penalties "'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (citation omitted) (placement in solitary confinement for indefinite period and complete loss of parole eligibility are atypical and significant hardships). Nothing in Peterson's allegations, however, suggests that the sanctions at issue

exposed Peterson to any atypical or substantial hardship in relation to the ordinary incidents of prison life, or otherwise exceeded the scope of his sentence. See Rezaq v. Nalley, 677 F.3d 1001, 1013 (10th Cir. 2012) ("extreme conditions in administrative segregation do not, on their own, constitute an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life' (citing Sandin, 515 U.S. at 484)); Michael v. Ghee, 498 F.3d 372, 378 (6th Cir. 2007) (alteration of inmate's parole eligibility date did not implicate protected liberty interest (citing cases)); Henry v. Dep't of Corr., 131 F. App'x 847, 850 (3d Cir. 2005) (permanent restriction on contact visits as sanction for drug-related disciplinary offense was not atypical hardship); Benbow v. Weeden, No. CA 13-334 ML, 2013 WL 4008698, at *3-*4 (D.R.I. Aug. 5, 2013) (one year of disciplinary segregation imposed for attack on officer was not atypical or significant hardship); Ventre v. Forgues, No. 4:11-CV-40205, 2013 WL 597643, at *4 (D. Mass. Feb. 14, 2013) ("revocation of prison law library privileges 'falls well below the kind of atypical and significant hardship' necessary to invoke the Due Process [C]lause" (citation omitted)). Peterson has thus failed to state a claim that he suffered any deprivation of a protected

liberty interest, as a result of the 2013 and 2014 disciplinary proceedings. Accordingly, he cannot assert a due process violation based on the deprivation of any liberty interest.

b. Property Interests

Peterson further alleges that the disciplinary proceedings in 2013 violated his due process rights by depriving him of two types of property interests, the loss of access to personal property when he was transferred to the CCU, and a $65 fee imposed upon him for failing to provide a urine specimen. The imposition of a $65 fee for a guilty finding on a drug charge, pursuant to published prison guidance, does not impose an atypical or significant hardship upon a prisoner in relation to the ordinary incidents of prison life. See, e.g., Watson v. Thomas, No. 1:12-CV-00216-IPJ, 2012 WL 6755059, at *4 (N.D. Ala. Oct. 31, 2012). Moreover, New Hampshire prisoners can recover for unauthorized losses or destruction of property attributable to official action. Cf. Levesque v. New Hampshire, No. 09-CV-248-JD, 2010 WL 2367346, at *39 (D.N.H. May 12, 2010) ("Claims alleging the theft, damage, loss or other misappropriation of property are not actionable under 42 U.S.C. § 1983 where, as here, there is an adequate post-deprivation state remedy

available." (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984))), report and recommendation adopted, No. 09-CV-248-JD, 2010 WL 2367231 (D.N.H. June 9, 2010). Accordingly, the due process claims based on the alleged loss of Peterson's property should be dismissed.

2. State Crimes

Peterson asserts that defendants tampered with a witness in the disciplinary proceedings and asserts a claim arising under the state criminal code. The criminal statute cited by Peterson does not provide him with a private right of action. Moreover, there is no federal right to have wrongdoers prosecuted. See Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another")). Accordingly, the district judge should dismiss Peterson's claims asserting violations of the state criminal code.

3. Void for Vagueness

Peterson also asserts a void for vagueness challenge to the prison regulation forming the basis for his 2014 conviction for being disrespectful to Capt. Cascio. To the extent Peterson

asserts an as-applied due process claim arising out of the 2014 disciplinary proceedings, for reasons stated above, that claim should be dismissed because the sanctions imposed upon Peterson did not implicate any protected interest. Furthermore, the regulation at issue resembles similar regulations that have been found to pass scrutiny under the "void for vagueness" doctrine. See, e.g., Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986) ("the concepts of vagueness and overbreadth have less scope when applied to the regulation of the free speech" of prisoners); Smith v. Campbell, No. CIV.A. 2:03CV973-ID, 2006 WL 2597837, at *2-*3 (M.D. Ala. Sept. 11, 2006). An objectively reasonable prisoner would understand that calling an officer a "liar" may be a sanctionable act of disrespect to that officer. Accordingly, the district judge should dismiss Peterson's void for vagueness claim.

C. Retaliation

Peterson alleges that defendants have harassed and otherwise retaliated against him since 2005, when he filed an action in federal court alleging that he had received inadequate medical care at the NHSP. To state a First Amendment retaliation claim, an inmate must allege, among other things,

that he suffered adverse action at the hands of the prison officials, and that there was a causal link between the exercise of his First Amendment rights and the adverse action taken. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011); Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009).

Peterson specifically attributes a retaliatory motive to the following incidents:

- In 2006 and/or 2007, prison officials charged Peterson with failing to provide a urine specimen and engaged in other behavior Peterson characterizes as harassing.

- In 2012, prison officials turned away Peterson's teenage son twice when he came to visit Peterson (after an eight-year hiatus in visits from his son), because the son did not appear on Peterson's approved visitor list and/or there was no notarized letter on file prior to the visit, authorizing the son to be escorted by a person other than his mother or guardian.

- Prison officials transferred Peterson to the NHSP Closed Custody Unit ("CCU") in March 2013 and to the Northern New Hampshire Correctional Facility CCU in June 2013, because of his conviction for failing to produce a urine specimen, thereby causing Peterson to lose property including a medical blanket and his glasses, and also disrupting Peterson's rehabilitation programming and mental health treatment, preventing Peterson's son from visiting him, and causing Peterson to lose access to means of physical fitness, all of which contributed to Peterson's mental health deterioration.

There is a three-year statute of limitations applicable to Peterson's section 1983 claims, including his retaliation claims, which accrued when Peterson knew or should have known of

his injuries. See Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010); see also N.H. Rev. Stat. Ann. § 508:4. Peterson's claims based on incidents occurring in 2006 and 2007 are time-barred.

As to incidents occurring in 2012 and 2013, Peterson has failed to allege facts showing a causal connection between the adverse acts alleged and his exercise of his First Amendment rights. The time that elapsed after the 2005 federal case and the alleged retaliatory acts is too long to give rise to a reasonable inference of a retaliatory motive. Moreover, Peterson has alleged facts establishing non-retaliatory reasons for transfers and denials of visits. Accordingly, the district judge should dismiss Peterson's retaliation claims.

D. Access to Courts

To state a claim for a denial of access to the courts, an inmate must show, among other things, that his ability to pursue a nonfrivolous claim that he has a right to litigate has been hindered. See Lewis v. Casey, 518 U.S. 343, 349-52 (1996). Stripped of legal conclusions, the facts alleged in the complaint do not show any hindrance to Peterson's ability to pursue non-frivolous claims. Accordingly, Peterson's access to

the courts claim should be dismissed.

**Conclusion**

For the foregoing reasons, the district judge should dismiss all of the claims in the complaint except the official capacity ADA claims against defendants Provost, Jardine, Eldridge, Gerry, Kench, and Wrenn, of which service is directed in the order issued this date, and all other defendants should be dropped from the case. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

Andrea K. Johnstone
United States Magistrate Judge

December 18, 2014

cc: Warren E. Peterson, pro se