UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Warren E. Peterson

   v.                                  Civil No. 14-cv-432-LM

New Hampshire Department of Corrections,
Commissioner William Wrenn, Warden Richard Gerry,
Capt. Christopher Kench, Hearing Officer
Lester Eldridge, Cpl. Provost, and
Corrections Officer K. Jardine[1]

**REPORT AND RECOMMENDATION**

Before the court is plaintiff Warren Peterson's Motion to Amend the Complaint (doc. no. 24), which this court construes to be a motion to add new or revised claims, restore claims that this court previously dismissed, and join new defendants.[2] Defendants object. See Doc. No. 25.

---

[1] Defendants listed in this caption are sued in their official capacities. All other defendants named in the original complaint have been dropped from this action. If this Report and Recommendation is approved, the following New Hampshire Department of Corrections personnel would be added as defendants: Capt. Paul Cascio; Lt. Marden, whose first name is unknown ("FNU"); Maj. Jon Fouts; Hearings Officer FNU Baxter; Lt. John Masse; and Capt. FNU Boyijian.

[2] Also before the court is plaintiff's "Amended Complaint" (doc. no. 21), which is essentially identical to the proposed complaint addendum (doc. no. 24-1). Document No. 24-1 is construed to supersede Document No. 21. Claims asserted in Document No. 21 should be allowed to proceed in this action only to the extent consistent with the district judge's ruling on this Report and Recommendation.

**Background**

Peterson filed this action in 2014 against a number of New Hampshire State Prison ("NHSP") and New Hampshire Department of Corrections ("DOC") employees, asserting claims of disability discrimination, due process violations, First Amendment retaliation, and interference with Peterson's right of access to the courts.  The January 14, 2015, Order (doc. no. 14) ("January 14 Order"), accepting the December 18, 2014, Report and Recommendation (doc. no. 11) ("December 18 R&R"), dismissed all of the claims and dropped all of the defendants asserted in the original complaint, except Claim 1 (as numbered below) against the DOC, and the following DOC officers, in their official capacities: Commissioner William Wrenn, NHSP Warden Richard Gerry, Capt. Christopher Kench, Hearing Officer Lester Eldridge, Cpl. Provost, and Corrections Officer K. Jardine.

**Claims**

Claim 1, asserted in the original complaint, seeks relief under Title II of the Americans with Disabilities Act ("ADA"), for disability discrimination relating to Peterson's paruresis (a condition characterized by difficulty urinating when others may be present):

    1.   Defendants discriminated against Peterson based on a disability, paruresis, in violation of his rights under the ADA Title II, in that they subjected Peterson to major disciplinary penalties for failing to provide a urine specimen for a drug test, where Peterson had a history of paruresis, and the charging officer did not comply with the conditions of Peterson's NHSP Medical Department "voiding pass," in requiring Peterson to provide a urine specimen.

The motion to amend (doc. no. 24) and proposed complaint amendment (doc. no. 24-1) seeks to add new claims under 42 U.S.C. § 1983, and to join new defendants to those claims. The claims asserted in the proposed complaint amendment are renumbered and summarized as Claims 2-9 below:

    2.   Defendants violated Peterson's Fourteenth Amendment due process rights, when, in March/April 2013 disciplinary proceedings relating to Peterson's failure to provide a urine specimen, (a) the hearing officer did not require NHSP physician Dr. Englander to appear as a witness to provide expert testimony, or to be cross-examined by Peterson; (b) the hearing officer received, as an offer of proof in lieu of testimony, an email reporting Dr. Englander's opinions, which Peterson alleges were based on hypotheticals prepared by the NHSP prosecuting officer that misrepresented the underlying facts; and (c) Peterson was denied an adequate opportunity, prior to the hearing, to obtain a written response from Dr. Englander to an inmate request slip seeking her opinions, where Peterson concluded that the answers the doctor had provided in writing to his first set of questions were incomplete.

    3.   Defendants caused Peterson to lose personal property, without adequate pre-deprivation procedures, in violation of Peterson's Fourteenth Amendment right to due process, when Peterson was transferred to the Close Custody Unit ("CCU") in March 2013, and to the Residential Treatment Unit ("RTU") in June 2013, because (a) defendants negligently or intentionally mishandled Peterson's property

in their possession, and (b) defendants applied a policy restricting the types of property Peterson could take with him to the CCU and the RTU.

4. Defendants subjected Peterson to inhumane conditions of confinement in violation of the Eighth Amendment, (a) in December 2002, and (b) on March 7, 2013, by directing him to provide a urine specimen without complying with the terms of a "voiding pass" that had been issued by the NHSP Medical Department in 2002.

5. Defendants violated Peterson's Fourteenth Amendment right to due process in May 2014, by finding Peterson guilty of "disrespect toward a staff member," where the disciplinary offense of "disrespect" is unconstitutionally vague.

6. Defendants retaliated against Peterson for exercising his First Amendment right to petition the government for redress of grievances, in that (a) Capt. Paul Cascio, Lt. Marden, Maj. Fouts, Hearings Officer Baxter, and Christopher Kench caused Peterson to be charged and found guilty of the disciplinary offense of "disrespect" because Peterson had complained, in an inmate request slip, that Cascio had lied to Peterson, and (b) Cascio has withheld $35 in back pay owed to Peterson for work performed in the RTU, since July 2014.

7. Defendants violated Peterson's First and Fourteenth Amendment right of access to the courts, in that Lt. John Masse and Capt. Boyijian in February/March 2013 seized Peterson's legal files and lost some of the files, while he was preparing to litigate a state post-conviction proceeding, which actually hindered Peterson's ability to litigate a claim in that proceeding.

8. Defendants retaliated against Peterson for exercising his First Amendment rights by complaining about his loss of access to his legal files in February/March 2013, by subjecting Peterson to a drug test in March 2013, knowing about Peterson's paruresis; and

4

9. Defendants subjected Peterson to (a) cruel and unusual punishment in violation of the Eighth Amendment, and (b) interference with his First Amendment right to associate with his son, by not permitting Peterson's son to visit him on Father's Day 2012 and Christmas 2012.

## Discussion

### I. Standard

Peterson's motion (doc. no. 24) seeks to add new defendants and new claims to this action. The motion is, in general, evaluated using the "same standard of liberality" that applies to motions that seek to add new claims. See Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010). Cf. Fed. R. Civ. P. 15(a) (court should liberally grant motions to amend consistent with interests of justice). The motion to amend may be denied where the proposed amendment is futile. See Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007) (citation omitted). The December 18 R&R sets out the standard this court applies in evaluating whether the proposed amendment states a claim.

### II. Procedural Due Process Claims

#### A. $65 Fee (Claim 2)

In Claim 2 above, Peterson reiterates his allegations that deficiencies in the March/April 2013 disciplinary hearing

resulted in sanctions affecting his property. In particular, he asserts, he was assessed a $65 administrative fee after he was found guilty of the major disciplinary offenses of failing to provide a urine specimen. The January 14 Order dismissed a similar procedural due process claim relating to the $65 fee, and the reasons stated therein are grounds for denying the motion to amend to the extent it seeks to restore Claim 2 to this lawsuit. Furthermore, there is an additional ground for not adding Claim 2 to this case, which is that defendants are entitled to qualified immunity, with respect to the imposition of the $65 administrative fee. See Watson v. Thomas, No. 1:12-CV-00216-IPJ, 2012 WL 6755059, at *5, 2012 U.S. Dist. LEXIS 184054, at *18 (N.D. Ala. Oct. 31, 2012) ("there is no clearly established right for the plaintiff to receive full procedural due process protections before his prison account is debited for a drug test fee"), report and recommendation adopted, No. 1:12-CV-216-IPJ-RRA, 2013 WL 23718, 2013 U.S. Dist. LEXIS 187 (N.D. Ala. Jan. 2, 2013). Cf. Machado v. Weare Police Dep't, 494 F. App'x 102, 107 (1st Cir. 2012) (affirming dismissal under 28 U.S.C. § 1915A on grounds of qualified immunity). Therefore, the motion to add Claim 2 to this case should be denied for reasons adopted by the court in dismissing the same claim in its

January 18 Order, and for the additional ground of defendants' qualified immunity.

    B.    <u>Mislaid or Stolen Property (Claim 3)</u>

In Claim 3, Peterson challenges the lack of pre-deprivation procedures which he asserts could have prevented the loss or theft of his personal property when he was transferred to a new unit. He alleges that the loss resulted from the policy of spreading his property on the floor in an unsecured location, and from a policy limiting the types of personal property inmates may possess in the CCU and RTU. The January 14 Order dismissed similar due process claims, on the ground that adequate and sufficient state post-deprivation procedures are available. <u>See</u> December 18 R&R (citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984)). In Peterson's case, as in <u>Hudson</u> and <u>Parratt v. Taylor</u>, 451 U.S. 527, 541 (1981), defendants' negligent or intentional failure to prevent Peterson's property from being mislaid or stolen is alleged to give rise to liability under § 1983. <u>See also</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986) (mere lack of due care by state official may not be deemed to "deprive" individual of life, liberty, or property under Fourteenth Amendment). Claim 3 thus fails to state a claim upon which relief can be granted. Therefore, the

motion to amend should be denied to the extent it seeks to add Claim 3 to this lawsuit.

    C.    <u>Void for Vagueness Disciplinary Offense (Claim 5)</u>

In Claim 5 above, Peterson reasserts a due process/void for vagueness claim that this court previously rejected in its January 14 Order adopting the December 18 R&R. For the reasons set forth in the December 18 R&R, the district judge should deny the motion to amend to the extent it seeks to add Claim 5 to this lawsuit.

**III. <u>Eighth Amendment Claims (Claims 4 and 9(a))</u>**

In Claims 4 and 9(a), plaintiff asserts claims of cruel and unusual punishment caused by defendants' failure to follow the terms of plaintiff's voiding pass, and defendants' failure to allow Peterson's son to visit him twice in 2012, on Christmas and Father's Day. Plaintiff has failed to allege facts, however, showing that refusing to allow plaintiff's minor son to visit him on those two occasions, and the failure of prison officials to give plaintiff: up to four hours of time to void his bladder; a private cell with a toilet; and a glass of water after ordering him to provide urine specimens, deprived him of the minimum measure of civilized life's necessities. There are also no allegations suggesting that the individuals involved in

those incidents were subjectively aware that refusing permission for those two family visits and not following the terms of the voiding pass presented a substantial risk of serious harm to Peterson. Therefore, the district judge should deny the motion to amend, to the extent it seeks to add Claims 4 and 9(a) to this lawsuit.

## IV. Right of Association Claim (Claim 9(b))

Claim 9(b) asserts a violation of Peterson's right of family association, relating to defendants' refusal to allow him to visit with his son on Christmas and Father's Day 2012. An inmate does not have a liberty interest in unfettered visitation that is protected by the Constitution. Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989). "[F]reedom of association is among the rights least compatible with incarceration," and "[s]ome curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539 U.S. 126, 131 (2003). If the challenged restrictions bear a reasonable relation to legitimate penological interests, the court will not invalidate those restrictions, see id. at 132 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)), provided they are not an exaggerated response to such interests. See Beard v. Banks, 548 U.S. 521, 528 (2006). In evaluating such restrictions, the court "must

accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton, 539 U.S. at 132. The burden is on the inmate to disprove that prison restrictions are valid. See id.

The January 14 Order, in adopting the December 18 R&R, specifically found that the allegations in the complaint showed that there were legitimate grounds for the prison officials' decisions. Further, nothing in the proposed complaint amendment suggests that prison officials denied Peterson phone or written contact with his son. Peterson has thus failed to show that decisions denying him visits with his son on Father's Day and Christmas 2012 were not reasonably related to legitimate correctional system goals. Accordingly, the motion to amend should be denied to the extent it seeks to add Claim 9(b) to this lawsuit.

V. **Right of Access to Courts (Claim 7)**

In Claim 7, above, Peterson asserts that defendants John Masse and Capt. Boyijian, in February and March 2013, improperly denied him access to his legal files and caused files to be lost, which prevented Peterson from litigating certain matters

in a state post-conviction proceeding. Peterson's assertion of a similar claim in the original complaint was dismissed because Peterson had not alleged sufficient facts to show that his ability to pursue any non-frivolous claim had been hindered. See Lewis v. Casey, 518 U.S. 343, 349-52 (1996).

In the complaint amendment (doc. no. 24-1), Peterson has pleaded new facts suggesting that Capt. Boyijian's and Lt. Masse's conduct actually impaired Peterson's ability to litigate a non-frivolous claim in a state post-conviction proceeding. See Doc. No. 24-1, at 18 (citing State v. Peterson, No. 218-1999-cr-0599 (N.H. Super., Rockingham Cnty. Nov. 22, 2013) (denying motion to reconsider)). To the extent Claim 7 is asserted against those defendants in their individual capacities, plaintiff has pleaded sufficient facts to state a claim under § 1983. Accordingly, the district judge should grant the motion to amend, in part, to the extent it seeks to add a claim for damages against defendants Boyajian and Masse in their individual capacities (Claim 7).

**VI. Retaliation (Claims 6 and 8)**

    A.    Retaliatory Discipline (Claim 6(a))

Plaintiff asserts that defendants Capt. Paul Cascio, Lt. Marden, Hearings Officer Baxter, Maj. Jon Fouts, and Christopher

Kench are liable to him for their involvement in disciplinary proceedings, in which Peterson was found guilty of stating in an inmate request slip that Capt. Cascio had lied to him.  To state a claim that defendants retaliated against Peterson for engaging in protected conduct, Peterson must allege facts showing: (1) that he engaged in conduct protected by the First Amendment; (2) that he suffered non-de minimis adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011); Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009).  An adverse act taken in response to protected conduct is not de minimis if it would deter an individual of ordinary firmness from exercising First Amendment rights.  See Starr, 334 F. App'x at 342.

In the proposed complaint amendment Peterson has alleged facts suggesting that the guilty finding on the disciplinary ticket rendered him ineligible to seek a sentence reduction in 2015, and that the disciplinary proceedings were instigated in retaliation for Peterson's efforts to initiate a grievance against Capt. Cascio, alleging that Cascio had lied to Peterson.  Peterson has alleged sufficient facts to warrant service of

Claim 6(a). Accordingly, the motion to amend should be granted to the extent it seeks to add Claim 6(a) against defendants Cascio, Marden, Baxter, Fouts, and Kench.

B.   <u>Withholding Backpay (Claim 6(b))</u>

Peterson has alleged that he believes Capt. Cascio has withheld backpay due to Peterson since July 2014, because of Peterson's accusation in the May 2014 inmate request slip that Cascio had lied to him. Peterson's allegations are minimally sufficient at this stage of the case to state a claim against Peterson for retaliation. Accordingly, the motion to amend should be granted to the extent it seeks to add Claim 6(b) against defendant Cascio.

C.   <u>Retaliatory Drug Test (Claim 8)</u>

Peterson has alleged that the requirement that the March 2013 drug test was an adverse act taken in retaliation for Peterson's complaining about his loss of access to his legal files in February/March 2013. Peterson has failed to allege any facts showing, however, that any officer specifically responsible for directing him to produce a specimen was aware of plaintiff's complaints about his legal files when he or she ordered Peterson to provide a urine sample, or that there were other pertinent circumstances that could give rise to a

reasonable inference that the drug test was retaliatory for Peterson's exercise of his First Amendment rights. Accordingly, the motion to amend should be denied to the extent it seeks to add Claim 8 to this lawsuit.

## Conclusion

For the foregoing reasons, the district judge should grant the motion to amend the complaint (doc. no. 24), in part, to the extent it reasserts Claim 1, as identified above, and seeks to add: Claim 6(a) against defendants Cascio, Marden, Fouts, Baxter, and Kench; Claim 6(b) against defendant Cascio; and Claim 7 against defendants Masse and Boyijian. The motion to amend should be denied in all other respects, particularly, to the extent it seeks to amend the pleadings to add Claims 2, 3, 4, 5, 8, and 9, or to add any new defendants other than Baxter, Boyijian, Cascio, Fouts, Marden, and Masse.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010).

_____
Andrea K. Johnstone
United States Magistrate Judge

September 16, 2015

cc: Warren E. Peterson, pro se
    Kenneth A. Sansone, Esq.
    Nancy J. Smith, Esq.